UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BARBARA MITCHELL,

                              Plaintiff,

And

PETTWAY-BAYLIS CORPORATION
d/b/a RISING STAR HEALTH
SERVICES,

                    Intervening Plaintiff,

vs.

ALLSTATE INSURANCE
COMPANY,

                              Defendant.

Civil Action No. 2:15-cv-11707-GAD-EAS

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## OBJECTION TO REMOVAL

Defendant Allstate Insurance Company ("Allstate"), by and through its

attorneys MOBLO, FLEMING & WATT, P.C., and for its Response to Plaintiff's

Objection to Removal, states as follows:

1.     Plaintiff, a Michigan citizen and resident, was involved in a motor

vehicle accident on May 1, 2014.

2.     As there was no auto policy which afforded Plaintiff coverage for said accident, Plaintiff made a claim with Michigan's Automobile Insurance Placement Facility, which then assigned Plaintiff's No-Fault claim to Defendant, an Illinois corporation, in July 2014.

3.     Four (4) months later on or about November 20, 2014, Plaintiff filed her cause of action against Defendant in Wayne County Circuit Court seeking PIP benefits for the May 1, 2014 motor vehicle accident.

4.     In her Complaint, Plaintiff asserted a Claim for Outstanding No-Fault Benefits, seeking medical expenses, household replacement services, attendant care services, wage loss benefits and "other benefits..." Plaintiff merely averred damages "in a sum greater than Twenty Five Thousand ($25,000)..."

5.     Rising Star Health Services, one of Plaintiff's providers, sought to intervene in the state court matter seeking reimbursement of Plaintiff's medical expenses for replacement services and attendant care No-Fault benefits for the May 1, 2014 motor vehicle accident.

6.     Rising Star provided a Billing Summary showing $176,040 purportedly due and owing for bills submitted on Plaintiff's behalf to Defendant for services rendered through April 18, 2015.

7.     Defendant removed this matter pursuant to 28. U.S.C. §1332.

8.     Plaintiff objects to the removal of this action on the grounds that (1)

2

there is no diversity in the present action; and (2) the amount in controversy does not exceed $75,000 because Rising Star has not yet intervened.

9.      Removal at this juncture is both timely and appropriate; as this Court and the Sixth Circuit Court of Appeals have held, the "direct action" provision of §1332(c)(1) does not apply to first-party actions seeking PIP benefits and in this matter, Defendant never issued *any* auto policy for which the "direct action" provision could apply. Additionally, the amount of claims submitted by or on Plaintiff's behalf to Defendant for reimbursement exceeds the $75,000 jurisdictional limit of this Court.

10.     Furthermore, as is apparent from the Billing Summary and true of most actions for PIP benefits, Plaintiff's claims continue to accrue daily; as such, the damages sought in this lawsuit will only continue to rise.

WHEREFORE, Defendant Allstate Insurance Company requests that Plaintiff's Objection to Removal be denied and this Honorable Court award Defendant attorney's fees and costs and any other relief deemed just and necessary.

Respectfully submitted,

MOBLO, FLEMING & WATT, P.C.

/s/ Prerana R. Bacon
_____

Prerana R. Bacon (P69680)
39555 Orchard Hill Place
Suite 310
Novi, MI 48375
734.542.8400
pbacon@moblofleming.com

*Attorneys for Defendant*
*Allstate Insurance Company*

Dated: May 29, 2015

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BARBARA MITCHELL,

                Plaintiff,

And

PETTWAY-BAYLIS CORPORATION
d/b/a RISING STAR HEALTH
SERVICES,

              Intervening Plaintiff,

vs.

ALLSTATE INSURANCE
COMPANY,

              Defendant.

Civil Action No. 2:15-cv-11707-GAD-EAS

## **BRIEF IN SUPPORT OF DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTION TO REMOVAL**

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ................................................................ ii

INDEX OF AUTHORITIES ................................................................................ iii

TABLE OF EXHIBITS .......................................................................................iv

I.      STATEMENT OF FACTS ......................................................................1

II.     AUTHORITY .........................................................................................2

III.    LAW AND ARGUMENT .......................................................................3

    A.     PLAINTIFF'S ACTION FOR PIP BENEFITS IS NOT A "DIRECT ACTION" FOR PURPOSES OF 28 U.S.C. §1332(c)(1). ....................3

        1.  There Is Complete Diversity In This Case, As Plaintiff's Suit Does Not Constitute A "Direct Action" Pursuant To 28 U.S.C. §1332(C)(1) Which Would Defeat Diversity Jurisdiction ...............3

    B.     THE AMOUNT IN CONTROVERSY EXCEEDS $75,000 AND AS SUCH, REMOVAL IS BOTH APPROPRIATE AND TIMELY. .......7

        1.  When Determining The Amount In Controversy, The Damages Sought By Plaintiff And Rising Star Must Be Considered Together, And Until Rising Star Is Permitted To Intervene, Its Bills Are Subsumed In Plaintiff's PIP Claim Against Allstate. ...............8

IV.     CONCLUSION ....................................................................................12

<u>**STATEMENT OF ISSUES PRESENTED**</u>

I.   **IS PLAINTIFF'S ACTION FOR PIP BENEFITS A "DIRECT ACTION" FOR PURPOSES OF 28 U.S.C. §1332 SO AS TO DEFEAT DIVERSITY JURISDICTION, PARTICULARLY WHEN DEFENDANT DID NOT ISSUE *ANY* AUTO INSURANCE POLICY?**

Plaintiff answers:        Yes
Defendant answers:        No

II.  **WAS REMOVAL TIMELY AND APPROPRIATE PURSUANT TO 28 U.S.C. § 1446(b)(3) AFTER DEFENDANT WAS PRESENTED WITH A CLAIM FOR MEDICAL EXPENSES FOR $176,040?**

Plaintiff answers:        No
Defendant answers:        Yes

# INDEX OF AUTHORITIES

## CASES

*Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) .................7, 11

*FL Aerospace v. Aetna Cas. & Sur. Co.*, 897 F.2d 214, 218-19 (6th Cir. 1990) ......3

*Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995)(citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938))......................................2

*Grinnell Mutual Reinsurance Co. v. Shierk*, 121 F.3d 1114, 1116 (7th Cir. 1997) ...8

*Her Majesty the Queen v. City of Detroit*, 874 F.2d 332, 339 (6th Cir.1989)...........8

*Ljuljdjuraj v State Farm Mutual Automobile Ins. Co.*, 774 F.3d 908 (6th Cir. 2014).6

*Moody v. Home Owners Ins. Co.*, 304 Mich. App. 415; 849 N.W.2d 31 (2014)......9

*Pullman v. Jenkins*, 305 U.S. 534, 540 (1939)..............................................................8

*Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000) ..........................8

*Stalbosky v. Belew*, 205 F.3d 890, 892 (6th Cir. 2000) .................................................2

*Union Planters Nat'l Bank v. CBS, Inc.*, 557 F.2d 84, 89 (6th Cir.1977).................8

*Warren v. State Farm Mut. Auto. Ins. Co.*, 2007 U.S.Dist. LEXIS 31408...............5

*Watkins v. Allstate Insurance Company*, 503 F. Supp. 848 (1980)...........................4

*Wilson v Republic Iron & Steel Go*, 257 U.S. 92 (1921)...........................................7

## STATUTES

28 U.S.C. § 1447(c)....................................................................................................8

28 U.S.C. §1332................................................................................................ passim

28 U.S.C. 1446(b)(3) ............................................................................................7, 12

M.C.L. §500.3101, *et seq* .........................................................................................6

# TABLE OF EXHIBITS

| | |
|---|---|
| Exhibit A | Plaintiff's Complaint |
| Exhibit B | Rising Star's Motion to Intervene |
| Exhibit C | Rising Star Billing Summary |
| Exhibit D | *Warren v. State Farm Mut. Auto. Ins. Co.*, 2007 U.S.Dist. LEXIS 31408 |
| Exhibit E | *Ljuljdjuraj v State Farm Mutual Automobile Ins. Co.,* 774 F.3d 908 (6th Cir. 2014) |

## I.   STATEMENT OF FACTS

Plaintiff, a Michigan citizen and resident, was involved in a motor vehicle accident on May 1, 2014.   As there was no auto policy which afforded Plaintiff coverage for said accident, Plaintiff made a claim with Michigan's Automobile Insurance Placement Facility, which then assigned Plaintiff's No-Fault claim to Defendant, an Illinois corporation, in July 2014.   Four (4) months later on or about November 20, 2014, Plaintiff filed her cause of action against Defendant in Wayne County Circuit Court seeking PIP benefits for the May 1, 2014 motor vehicle accident.   *See* Plaintiff's Complaint, attached as **Exhibit A.**   In her Complaint, Plaintiff asserted a Claim for Outstanding No-Fault Benefits, seeking medical expenses, household replacement services, attendant care services, wage loss benefits and "other benefits…" **Exhibit A, ¶10.**   Plaintiff merely averred damages "in a sum greater than Twenty Five Thousand ($25,000)…"

During the course of discovery, Defendant sought to take the deposition of Rising Star Health Services pursuant to MCR 2.306(b)(5) in order to better understand the replacement and attendant care allegedly being rendered to Plaintiff by Rising Star "employee," Shawnisha Carpenter.   Rising Star was also requested to produce certain documents relative to Plaintiff's claim.   Deborah Sanders, who claimed to be an employee of the corporation, contacted defense counsel and agreed to present herself for the deposition on May 13, 2015.   On May 11, 2015, in

1

lieu of presenting Ms. Sanders for deposition, Rising Star (by its counsel) filed a motion to intervene in the Wayne County Circuit Court case. *See* Rising Star's Motion to Intervene and Brief (exclusive of exhibits), attached as **Exhibit B.** Rising Star submitted a Billing Summary, signed by Ms. Sanders, alleging its bills total $176,040 for services rendered to Plaintiff. *See* Billing Summary, attached as **Exhibit C.** As such, Allstate removed the instant cause of action, as the amount in controversy, as ascertained from the Billing Summary and all of Plaintiff's previously submitted claims, now clearly exceeds $75,000.

## II.    AUTHORITY

When jurisdiction is based on diversity of citizenship, a federal court is required to apply the law of the forum state. *Stalbosky v. Belew*, 205 F.3d 890, 892 (6th Cir. 2000). Therefore, this case is governed by Michigan law. "When deciding a diversity case under state law, a federal court must apply the law of the state's highest court." *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995)(citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). "If, however, the state's highest court has not decided the applicable law, then the federal court must ascertain the state law from all relevant data." *Id.*(internal citations omitted). "[A]n intermediate appellate court's judgment that announces a rule of law is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court

of the state would decide otherwise." *FL Aerospace v. Aetna Cas. & Sur. Co.*, 897

F.2d 214, 218-19 (6th Cir. 1990)(internal citations omitted).

## III.    LAW AND ARGUMENT

### A.    PLAINTIFF'S ACTION FOR PIP BENEFITS IS NOT A "DIRECT ACTION" FOR PURPOSES OF 28 U.S.C. §1332(c)(1).

Federal court jurisdiction based upon diversity of citizenship is governed by

28 U.S.C. §1332(a)(1), which states in pertinent part:

> (a)    The District Courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between
> -
> (1)    citizens of different states.

There is no dispute Plaintiff is a resident of the State of Michigan. However,

Plaintiff denies there is diversity of citizenship because Allstate "insures Michigan

residents and conducts business in Michigan."    While it is true that Allstate is

authorized to conduct business in the State of Michigan, this activity does not bear

on Allstate's citizenship for purposes of determining diversity.    Allstate is a

corporation duly created and organized by and under the laws of the State of

Illinois, with its principal place of business in Northbrook, Illinois.    Therefore,

Allstate is a resident of the State of Illinois.

> **1.    There Is Complete Diversity In This Case, As Plaintiff's Suit Does Not Constitute A "Direct Action" Pursuant To 28 U.S.C. §1332(C)(1) Which Would Defeat Diversity Jurisdiction.**

The Sixth Circuit has long recognized that claims for PIP benefits against a No-Fault insurer are not "direct action" suits. 28 U.S.C. §1332(c)(1) states in pertinent part:

> (c) For the purposes of this section, and Sec. 1441 of this title…
>
> > (1) A corporation shall be deemed to be a citizen of any state by which it has been incorporated and the state where it has its principal place of business except that in any **direct action against the insurer of a policy or contract of liability insurance,** whether incorporated or unincorporated, to which the insured is not joined as a party defendant, such insurer shall be deemed a citizen of the state of which the insured is a citizen, as well as of any state by which the insurer has been incorporated and any state where it has its principal place of business.

(Emphasis added).

This issue has previously been decided in a number of cases.  In a case directly on point with the facts of this case, *Watkins v. Allstate Insurance Company*, 503 F. Supp. 848 (1980), Watkins filed suit against Allstate seeking PIP benefits for a May 1979 motor vehicle accident.  Allstate removed the case to federal court, and Watkins challenged the removal alleging no diversity, like Plaintiff here.  The federal court denied the plaintiff's motion and appropriately retained jurisdiction, first addressing the legislative intent of the statute.

> It is apparent that the intent of the statute was to preclude diversity jurisdiction in situations where the state law authorizes a direct tort action by a person injured by a tortfeasor against the tortfeasor's insurance carrier where the tortfeasor is not a party…It was to prohibit diversity jurisdiction in only this direct tort action by Plaintiff injured

4

by the negligence of an insured tortfeasor, against the tortfeasor's carrier where the tortfeasor was not a party that 28 U.S.C. § 1332(c) was enacted.

**This Court finds that in order to effectuate the purpose of the proviso, a distinction must be drawn between actions where the suit involves a direct action by a tort claimant against the tortfeasor's insurance carrier in which the tortfeasor is not a party, and cases where Plaintiff, in a direct action against an insurer seeks to obtain contractual benefits according to the terms of a policy of insurance.**

In the first instance, the action is brought on a tort theory and constitutes a direct action on a policy or contract of liability insurance. Thus, the proviso of 28 U.S.C. § 1332 applies and operates to divest the federal courts of diversity jurisdiction by imputing the residence of the insured tortfeasor to the insurance carrier.

**In the second instance, the action constitutes a contract action against the insurance carrier. Thus, the proviso does not apply and the federal courts have diversity jurisdiction over the action.**

*Id.* at 850-851.(internal citations omitted)(emphasis added).

In yet another case involving a claim for No-Fault benefits, *Warren v. State Farm Mut. Auto. Ins. Co.*, 2007 U.S.Dist. LEXIS 31408, attached as **Exhibit D,** the plaintiff again opposed State Farm's removal of the matter, arguing that diversity jurisdiction was lacking under §1332(c)(1). This Court agreed with State Farm, and rejected the plaintiff's interpretation of §1332(c)(1):

Congress enacted [§ 1332(c)(1)] in order to prevent a plaintiff of State A, who was injured by a party who is also a resident of State A, from achieving diversity jurisdiction by suing the other party's foreign insurance company while intentionally failing to join the individual party in the suit. In other words, the statute prevents "back door diversity," i.e., the practice of substituting a tortfeasor's insurer for the

tortfeasor as a named defendant to create diversity. **<u>Accordingly, diversity will not be defeated in no-fault insurance disputes where the plaintiff sues the insurance company directly, rather than the owner or operator of the insured vehicle</u>**.

The Sixth Circuit has recently observed that § 1332(c)(1) does not apply where its purpose would not be served; i.e., in actions by an insured against his own insurer to recover for his own injuries. *See Lee-Lipstreu v. Chubb Group of Ins. Co.*, 329 F.3d 898, 899-900 (2003) (observing that application of "the direct action provision to a dispute solely between an insured and her own insurance company would result in an absurdity-federal courts would never hear common insurance disputes because the insured and the insurer, the plaintiff and the defendant, would always be considered citizens of the same state.") *Accord Henry v. Wassau Business Ins. Co.*, 351 F.3d 710, 713 (2003) (observing that "federal courts have jurisdiction over actions by an insured against his or her own insurance company if the two parties are diverse because such actions are not direct actions within the meaning of 28 U.S.C. § 1332(c)(1).").

*Id.* at *3-4(certain internal citations omitted).

This holding was re-affirmed in the Sixth Circuit's opinion in *Ljuljdjuraj v State Farm Mutual Automobile Ins. Co.,* 774 F.3d 908 (6th Cir. 2014), attached as **Exhibit E.**

 Applying the law to the facts of this case, Plaintiff is seeking benefits under Michigan's No-Fault Statute, M.C.L. §500.3101, *et seq*, which is not a liability policy provision.  More importantly, Allstate *never* issued an auto policy to Plaintiff, as Plaintiff's claim was assigned to Allstate by the Assigned Claims Facility.  By virtue of the foregoing, Plaintiff's lawsuit cannot be considered a "direct action"

against an insurer of a policy or contract of liability insurance under §1332, and complete diversity exists between the parties.

### B. THE AMOUNT IN CONTROVERSY EXCEEDS $75,000 AND AS SUCH, REMOVAL IS BOTH APPROPRIATE AND TIMELY.

Diversity jurisdiction exists where the action is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest. A defendant seeking removal of a case carries the burden of proving that the diversity jurisdiction requirements have been met. *Wilson v Republic Iron & Steel Go*, 257 U.S. 92 (1921).

Where a plaintiff seeks to recover an unspecified amount that is not in and of itself greater than the amount-in-controversy requirement, the defendant may still satisfy the amount-in-controversy requirement by showing that the plaintiff's claim "more likely than not" meets the threshold. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006). Claims present when a suit is removed but subsequently dismissed from the case are also to be considered when calculating the amount in controversy. *Id.* at 822. Moreover, in cases where a plaintiff's initial pleading (such as Plaintiff's Complaint here) seeks to recover an unspecified amount, a defendant may remove the case within thirty days after receipt of documentation from which it may ascertained that the case is one which is or has become removable. 28 U.S.C. 1446(b)(3).

7

Once a defendant removes a case from state to federal court, the plaintiff may challenge the removal. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). The determination of federal jurisdiction in a diversity case is made as of the time of removal. *Id.* at 871. Once jurisdiction vests, subsequent events that reduce the amount in controversy to an amount less than $75,000 will not divest the Court of jurisdiction. *Grinnell Mutual Reinsurance Co. v. Shierk*, 121 F.3d 1114, 1116 (7th Cir. 1997). The removing party bears the burden of showing that removal is proper. *See Pullman v. Jenkins*, 305 U.S. 534, 540 (1939); *Her Majesty the Queen v. City of Detroit*, 874 F.2d 332, 339 (6th Cir.1989). Any doubt as to whether the removal is proper should be resolved in favor of remand to state court. *See* 28 U.S.C. § 1447(c); *see also Union Planters Nat'l Bank v. CBS, Inc.*, 557 F.2d 84, 89 (6th Cir.1977).

**1.    When Determining The Amount In Controversy, The Damages Sought By Plaintiff And Rising Star Must Be Considered Together, And Until Rising Star Is Permitted To Intervene, Its Bills Are Subsumed In Plaintiff's PIP Claim Against Allstate.**

As stated above, Plaintiff's Complaint merely claimed damages in excess of $25,000. However, Rising Star's Billing Summary indicates $176,040 is due and owing for Plaintiff's medical expenses.   When determining the amount in controversy at the time of Allstate's removal, the damages sought by Plaintiff and Rising Star must be aggregated; nevertheless, under the circumstances, because

Rising Star has not yet intervened, its bills would be subsumed in Plaintiff's total PIP claim against Allstate.

The Michigan Court of Appeals recently analyzed the issue of how to determine the amount in controversy when a medical provider and an insured both file suits seeking No-Fault benefits in *Moody v. Home Owners Ins. Co.,* 304 Mich. App. 415; 849 N.W.2d 31 (2014). In *Moody,* the plaintiff filed suit in the 36th District Court, alleging his damages were less than $25,000.00. Three medical providers filed a separate suit also in the 36th District Court, alleging entitlement for services rendered to Moody. The providers were seeking nearly $22,000 in damages, collectively. Home Owners was successfully able to consolidate the cases.

During the course of discovery, Moody alleged he was entitled to nearly $400,000 in damages. At trial, Home Owners moved to have the case transferred to Circuit Court arguing the District Court lacked jurisdiction based on the damages claimed. The District Court denied the motion, and after trial, Home Owners appealed the verdicts in both cases. The Circuit Court set aside the verdicts and ordered both cases to be transferred to the Circuit Court for a new trial.

Moody and the providers appealed the Circuit Court's ruling, which was affirmed by the Court of Appeals. With respect to the providers' suits, and

9

specifically, their argument that their claims could be severed from Moody's and

tried in the District Court, the Court of Appeals concluded:

> While the providers may bring an independent cause of action against
> a no-fault insurer, **the providers' claims against Home Owners are**
> **completely derivative of and dependent on Moody's having a valid**
> **claim of no-fault benefits against Home Owners**. Specifically, the
> providers' claims are dependent on establishing Moody's claim that
> he suffered "accidental bodily injury arising out of the . . . use of a
> motor vehicle," MCL 500.3105(1), that they provided "reasonably
> necessary products, services and accommodations for [Moody's] care,
> recovery, or rehabilitation," MCL 500.3107(1)(a) . . . The providers'
> and Moody's claims with respect to the requisites of Home Owners'
> liability are therefore identical. **Because there is an identity between**
> **Moody's claims and those of the providers and because the claims**
> **were consolidated for trial, we consider them merged for the**
> **purpose of determining the amount in controversy under MCL**
> **600.8301(1)...**
>
> Here, there is virtual identity between the providers' and Moody's
> claims, and Moody could have brought all the claims in a single case
> in which a single judgment was entered. **Indeed, it is Moody's claim**
> **against Home Owners that the providers are allowed to assert**
> **because no-fault act states that "benefits are payable to or for the**
> **benefit of an injured person," MCL 500.3112. But the providers'**
> **claims actually belong to Moody because "the right to bring an**
> **action for personal protection insurance [PIP] benefits, including**
> **claims for attendant care services, belongs to the injured party."**

*Id.* at 440-443(emphasis added)(internal citations omitted).

Accordingly, the Court held that consolidation of the providers' claims and

Moody's claims resulted in merging the claims for purposes of determining the

amount in controversy. "Because the providers' claims are derivative of Moody's

claims, the consolidated claims are the equivalent of a single plaintiff asserting multiple claims against a single defendant." *Id.* at 443.(internal citations omitted).

In this case, Rising Star's claims are completely derivative of Plaintiff's claims against Allstate. Rising Star may only recover to the extent Plaintiff is entitled to recover benefits from Allstate. Further, because Rising Star seeks to intervene in Plaintiff's suit (as opposed to filing its own separate suit), both claims would necessarily be consolidated for purposes of trial, which means the amount in controversy must be determined based on the aggregate of the two claims. Because the aggregate of the claims well exceeds $75,000, this court has subject matter jurisdiction over the claims, and diversity jurisdiction has been satisfied.

More importantly, because Rising Star has yet to intervene, there can be no question that Rising Star's claim for outstanding bills totaling $176,040 belongs to Plaintiff. Stated another way, had Rising Star chosen not to seek intervention, it would be Plaintiff who would be seeking reimbursement of Rising Star's bills as part of her overall PIP claim. Additionally, Allstate only became aware that this case became removable when presented with the Billing Summary. And because Plaintiff sought to recover an unspecified amount of damages in her Complaint, this case became removable because Rising Star's Billing Summary establishes that Plaintiff's claim "more likely than not" meets the jurisdictional threshold. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006); 28 U.S.C.

1446(b)(3).   In light of the foregoing, removal is both timely and appropriate and Plaintiff's Objection should be denied.

## IV.   CONCLUSION

WHEREFORE, Defendant Allstate Insurance Company requests that Plaintiff's Objection to Removal be denied and this Honorable Court award Defendant attorney's fees and costs and any other relief deemed just and necessary.

Respectfully submitted,

MOBLO, FLEMING & WATT, P.C.


/s/ Prerana R. Bacon
_____
Prerana R. Bacon (P69680)
39555 Orchard Hill Place
Suite 310
Novi, MI 48375
734.542.8400
pbacon@mobloflemming.com

*Attorneys for Defendant*
*Allstate Insurance Company*


Dated: May 29, 2015

## CERTIFICATE OF SERVICE

I, Prerana R. Bacon, hereby certify that on May 29, 2015, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system. I hereby certify that my legal assistant has mailed a copy of the foregoing document and all exhibits thereto to the following via United States First-Class Mail:

Sam Elia, Esq.
ELIA & PONTO, P.L.L.C.
25800 Northwestern Hwy., Suite 850
Southfield, MI 48075

Jeremy Knox, Esq.
THE LOBB LAW FIRM
26321 Woodward Ave.
Huntington Woods, MI 48070

/s/ Prerana R. Bacon

Prerana R. Bacon (P69680)
39555 Orchard Hill Place
Suite 310
Novi, MI 48375
734.542.8400
pbacon@moblofleming.com

Dated: May 29, 2015

# EXHIBIT "A"

Ik

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

BARBARA MITCHELL,                          CASE NO: 14-          -NF
                                           Hon.:
        Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,                          14-014948-NF
a foreign corporation                          FILED IN MY OFFICE
                                           WAYNE COUNTY CLERK
        Defendant.                          11/20/2014 11:24:35 AM
                                  /          CATHY M. GARRETT

SAM E. ELIA (P-76230)
ELIA & PONTO, PLLC
Attorneys for Plaintiff
25800 Northwestern Hwy., Ste., 850
Southfield, Michigan 48076
(248)595-8579
(248)595-8729 fax
                                  /

There is no other civil action between these parties arising out of the same transaction or
occurrence as alleged in this Complaint pending in this Court, nor has any such action
been previously filed and dismissed or transferred after having been assigned to a judge,
nor do I know of any other civil action, not between these parties, arising out of the same
transaction or occurrence as alleged in this Complaint that is either pending or was
previously filed and dismissed, transferred, or otherwise disposed of after having been
assigned to a judge in this Court.

                        /s/ Sam E. Elia
                _____
                Sam. E. Elia, Attorney for Plaintiff

## COMPLAINT

NOW COMES the Plaintiff, BARBARA MITCHELL, by and through her attorneys, ELIA

AND PONTO, PLLC, and for her cause of action against the Defendant, states as follows:

1.      That the Plaintiff, BARBARA MITCHELL, is and has been at all times pertinent

hereto, a resident of the City of Detroit, County of Wayne, State of Michigan.

1

2.     That the Defendant, ALLSTATE INSURANCE COMPANY is a foreign corporation, authorized to do business in the State of Michigan, and up on information and belief at all times relevant hereto was doing business throughout the State of Michigan, specifically Wayne County.

3.     That this action arose and jurisdiction exists in the Court by reason of a collision which occurred west bound on Michigan Avenue in the City of Detroit, County of Wayne, State of Michigan, on or about May 1, 2014.

## CLAIM FOR OUTSTANDING NO-FAULT BENEFITS

4.     Defendant, ALLSTATE INSURANCE COMPANY, is a foreign corporation, duly organized and existing under the laws of the State of Michigan and, at all times pertinent herein, was conducting business in the City of Detroit, State of Michigan.

5.     That on May 1, 2014, the Plaintiff was involved in a collision in the City of Detroit, County of Wayne, State of Michigan, and that by reason of said collision, Plaintiff sustained personal injuries.

6.     At the time of the motor vehicle collision, Plaintiff, BARBARA MITCHELL, did not have any no-fault insurance in effect on any automobile, nor did anyone in her household.

7.     Plaintiff's claim for Personal Injury Benefits was assigned to ALLSTATE INSURANCE COMPANY (claim number ACP 1402220022JH) through the Michigan Assigned Claims Facility in accordance with Chapter 31 of the Michigan Insurance Code, more commonly known as the "No-Fault Insurance Law."

8.    That following the collision the said Plaintiff notified the Defendant of the incident and completed various forms and reports and otherwise cooperated with the Defendant insurance company and supplied the Defendant with the items as requested relating to damages sustained, and which include medical information and that the Defendant is aware of all the circumstances surrounding the collision and the nature of the injuries by the Plaintiff and has been supplied with documentary evidence.

9.    That the Plaintiff became available for benefit and that demand for payment of such benefits has been made.

10. That by reason of the within collision the Plaintiff sustained injuries which required medical treatment, rehabilitation treatment, household replacement services, attendant care services, prescription items and medical appliances, wage loss benefits, and other benefits under said policy, and that the Plaintiff so remains disabled to perform his/her normal duties and normal functions in a manner that Plaintiff could prior to the collision.

11.    That proper written and/or actual notice was given to the Defendant as soon as practicable after the aforesaid automobile collision.

12.    That by virtue of the foregoing Defendant has become liable to pay over to Plaintiff for certain benefits.

13.    That personal protection insurance benefits are overdue and the Defendant has received reasonable proof of the fact and amount of loss sustained and has not made prompt payment within 30 days, but has refused, neglected, or failed to do so.

3

14.     That Defendant has unreasonably refused to pay or has unreasonably delayed in making proper payments to the Plaintiff for certain personal protection insurance benefits in violation of MCLA 500.3101 et. sec., and continues to do so.

15.     Plaintiff claims as damages all outstanding personal protection insurance benefits, 12% penalty interest in accordance with MCLA 500.3142, attorney fees in accordance with MCLA 500.3148, and any and all other amounts he is entitled to recover under the laws of the State of Michigan, common law and statutory.

WHEREFORE, Plaintiff, BARBARA MITCHELL, demands judgment against the Defendant, ALLSTATE INSURANCE COMPANY, in a sum greater than Twenty Five Thousand ($25,000) Dollars, to be made certain at the trial of this action, together with costs, interest and attorney fees.

Respectfully submitted,

ELIA & PONTO, PLLC

By:   /s/ Sam E. Elia
        SAM E. ELIA (P-76230)
        Attorneys for Plaintiff
        25800 Northwestern Hwy., Ste 850
        Southfield, MI 48075
        (248)595-.8579
        (248)595- 8729 fax

Dated: November 20, 2014

4847-3981-3664, v. 1

4

# EXHIBIT "B"

STATE OF MICHIGAN

IN THE 3rd CIRCUIT COURT FOR THE COUNTY OF WAYNE

BARBARA MITCHELL,

     Plaintiff,

and

RISING STAR HEALTH SERVICES, an assumed name for
PETTWAY BAYLIS CORPORATION,

     Intervening Plaintiff,

-v-                             Case No. 14-014948-NF
                                   Hon. Patricia Fresard

ALLSTATE INSURANCE COMPANY,

     Defendant.

| | |
|---|---|
| THE LOBB LAW FIRM<br>JEREMY KNOX (P63907)<br>KAROLINA MCGOVERN (P77064)<br>Attorneys for Intervening Plaintiff<br>26321 Woodward Avenue<br>Huntington Woods, MI 48070<br>(248) 591-4090<br>(248) 591-4089 (f) | ELIA & PONTO, PLLC<br>SAM ELIA (P76230)<br>Attorney for Plaintiff, Barbara Mitchell<br>25800 Northwestern Hwy., Suite 850<br>Southfield MI 48075<br>(248) 595-8579 |
| MOBLO FLEMING & WATT<br>PRERANA RATHOD BACON (P69680)<br>Attorney for Defendant, Allstate<br>39555 Orchard Hill Place, Suite 310<br>Novi, MI 48375<br>(734) 542-8400 | |

## RISING STAR HEALTH SERVICES'S
## MOTION TO INTERVENE AS PARTY PLAINTIFF

Intervention Applicant, RISING STAR HEALTH SERVICES, an assumed name for PETTWAY

BAYLIS CORPORATION (hereinafter referred to as "RISING STAR HEALTH SERVICES"), moves to

intervene as a Plaintiff in this action and states as follows:

1. This is an action for no-fault benefits pursuant to MCL.500.3101, *et seq.*, arising out of a motor vehicle accident. Plaintiff, Barbara Mitchell sustained bodily injury in that accident and claims certain no-fault insurance benefits from Defendant.

2. Intervening applicant, Rising Star Health Services, provides medical services. Rising Star Health Services has provided services to Barbara Mitchell for injuries arising out of the auto accident and have incurred $176,040.00, to date in charges for reasonably necessary services provided to her since July 15, 2014, and for which they seek reimbursement pursuant to the Michigan No-Fault Act, MCL 500.3101, *et. seq.*

3. Defendant is the highest priority insurer for Barbara Mitchell's no-fault benefits. Defendant is obligated to pay all reasonable charges for reasonably necessary products, services and accommodations that arise out of Barbara Mitchell's motor vehicle accident.

4. Rising Star Health Services has submitted reasonable proof of the fact and of the amount of its losses pursuant to the Michigan No-Fault Act, MCL 500.3101, *et. seq.* and demanded payment. Defendant has refused to pay for the services provided by Rising Star Health Services.

5. Under MCR 2.209 (A)(3) a person has a right to intervene when the intervening applicant claims an interest in an action and its ability to protect its interest may be impaired or impeded if intervention is denied.

6. Under MCR 2.209 (B)(2) intervention is permissible "when an applicant's claim or defense and the main action have a question or law or fact in common."

7. Rising Star Health Services requires their own representation to fully protect their interests in the no-fault benefits paid to or for the benefit of Barbara Mitchell.

8. Rising Star Health Services' claims and defenses involve the same governing law and similar facts as the underlying action because all of the claims arise out of the same accident or occurrence, the motor vehicle accident..

9. Attached to this motion is Rising Star Health Services' Proposed Complaint setting forth its claim against Defendant (See attached as **Exhibit A—Proposed Complaint**).

10. Also attached to this motion is Rising Star Health Services' Proposed Order granting its Motion to

Intervene. **(Exhibit B)**

**WHEREFORE,** Intervention Applicant, Rising Star Health Services, respectfully requests that this Court

enter an order allowing it to intervene as a party plaintiff and file the attached pleadings.

<div style="margin-left: 40%;">

Respectfully Submitted,

THE LOBB LAW FIRM

/S/ JEREMY KNOX

JEREMY KNOX (P63907)
Attorney for Intervening Applicant
26321 Woodward Avenue
Huntington Woods, MI 48070
(248) 591-4090

</div>

Dated: May 11, 2015

<div style="text-align: center;">

**BRIEF IN SUPPORT OF MOTION TO INTERVENE**

</div>

**I.      INTRODUCTION AND BRIEF FACTUAL SUMMARY**

Under Michigan's No-Fault jurisprudence, medical service providers have both a direct and

derivative right of action to pursue No-Fault reimbursement for services provided to their patients for

injuries sustained in motor vehicle accidents. *Lakeland v State Farm,* 250 Mich App 35, 39 (2002); *U of M

Regents v State Farm,* 250 Mich App 719 (2002). In *DeVillers v ACIA,* 473 Mich 562 (2005), the Michigan

Supreme Court opined that the submission of charges (i.e., claim to No-Fault insurer) does not toll the one-

year back statute of limitations.

Rising Star Health Services discovered that litigation is pending between Ms. Mitchell and

Defendant relating to the recovery of No-Fault benefits. Concerned that their charges were not being paid

by Defendant and that Rising Star Health Services' claims may not be adequately represented, Rising Star

Health Services had no recourse but to seek its own legal counsel in order to preserve its right to be

reimbursed. In *Accident Victims Home Health Care v Allstate,* unpublished opinion per curiam of the Court

of Appeals, decided June 6, 2008 (Docket No. 257786)**(Exhibit C)** , the Court stressed the importance of

medical providers intervening in their patients' lawsuits or taking other affirmative action to protect their interests. *Accident Victims* reaffirms a medical service provider's right to either intervene in an existing suit or to file suit on its own behalf:

> Indeed as noted, our case law holds that Accident Victims has standing to pursue No-fault benefits just as the insurer [sic] has that right. *Id.* at 4.

Rising Star Health Services is a rightful claimant of No-Fault benefits from Defendant, and Defendant has notice of the claims and reasonable proof of the fact and the amount of the loss. Intervention is necessary for the Court to render full and complete relief pursuant to MCR 2.209.

## II.     MEMORANDUM OF LAW REGARDING INTERVENTION

### A.     Intervention Generally

Intervention may be permitted by statute and court rule. Intervention is appropriate when the party seeking to intervene is concerned that its interests will not be adequately protected, when the applicant has an interest relating to the subject matter of the suit and when the applicants claim and the main action have common questions of law and fact. Intervention is warranted in this case because Rising Star Health Services meets the requisite criteria for intervention both under the MCL 500.3112 of the No-Fault Act, and the court rules governing intervention by right and permissive intervention, MCR 2.209(A) and (B), respectively.

In this case Rising Star Health Services, as a medical service provider, has a right to bring a direct action against Defendant to be reimbursed for its services. *See Lakeland Neurocare Centers,* 250 Mich App 67 (2002) and *The Regents of the University of Michigan v State Farm,* 250 Mich App 719 (2002). However, intervention is a much more economical and cost effective procedural device than filing and prosecuting a separate lawsuit with the same issues, witnesses and facts. Intervention is important because service providers are frequently not represented in the No-Fault litigation when the injured party is merely presenting claims to the No-Fault insurer. The unfortunate result is that frequently service provider claims are barred when the plaintiff's other claims are settled or concluded by mutual acceptance of case evaluation awards.

Intervention is appropriate in this case as of right by permission and by statute. Rising Star Health Services relies on MCR 2.209 (A) and (B), its interpretive case law and MCL 500.3112 in support of its application to intervene.

### B.    Intervention by Right pursuant to MCR 2.209 (A)

Pursuant to MCR 2.209(A), on timely application, the right to intervene in an action exists:

> (3)…when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so siuated that the disposition of the action may as a practice matter impair or impeded the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rising Star Health Services satisfies the criteria set forth in MCR 2.209(A). The payment of No-Fault benefits including medical charges is the subject of the action. If Rising Star Health Services is not represented by counsel, its ability to receive payment will be prejudiced. Moreover, if Rising Star Health Services is not involved in this action, there is no guarantee that its claims will not be lost or reduced among the myriad of Ms. Mitchell's other claims, either by way of settlement or mutual acceptance of a case evaluation award.

### C.    Permissive Intervention pursuant to MCR 2.209(B)

Pursuant to MCR 2.209(B), on timely application a person may intervene in an action:

> (2) when an applicant's claim or defense and the main action have a question of law or fact in common.
>
> In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of rights of the original parties.

In this case, intervention is appropriate by leave of the Court pursuant to MCR 2.209(B)(2) because Rising Star Health Services' claims and the main action have a question of law and fact in common. The applicable and governing law is the same: the No-Fault Act. Moreover, all of the claims share the same nucleus of operative fact because they all arise out of the same motor vehicle accident and injuries.

There will be no prejudice to any party by allowing intervention. Intervention in this case, will facilitate the litigation, is cost effective and will conserve both judicial resources as well as the resources

of our respective clients. All of the discovery that remains to be conducted, if any, can be done

conjointly to avoid duplication of time, effort and expense.

> **D.    Intervention by Right pursuant to MCL 500.3112**

MCL 500.3112 confers a statutory right of intervention in No-Fault disputes to claimants and

interested persons entitled to personal injury protection benefits. Section 3112 provides in pertinent

part:

> If there is doubt about the proper person to receive the benefits or the
> proper apportionment among the persons entitled thereto, the insurer,
> the claimant or any other interested person may apply to the
> circuit court for an appropriate order. The court may designate the
> payees and make an equitable apportionment, taking into account the
> relationship of the payees to the injured person and other facts as the
> court considers appropriate (emphasis added).

Sec. 3112 provides proof that the legislature contemplated and was aware that intervention might become

necessary in No-Fault disputes. Accordingly, it provided a statutory mechanism by which interested parties could

participate in an action previously commenced. Rising Star Health Services has specific concerns regarding its

ability to obtain full reimbursement for the services it provided to Ms. Mitchell given the current posture of the

litigation. Proceeding with their own counsel is a way to ensure that Rising Star Health Services will be

adequately informed and fully represented.

> **E.   Intervention Has Been Allowed by Michigan Courts in Other No-Fault Disputes**

Michigan courts have long permitted service providers to intervene in No-Fault litigation pending

between insurer and insured. See generally *Johnson v Mich. Mutual*, 180 Mich. App. 314 (1989); and *Botsford*

*Hospital v Citizens*, 195 Mich App 127 (1992). The Court of Appeals discussed intervention in the unpublished

decision of *Marsack v Citizens*, unpublished opinion per curiam of the Court of Appeals, decided December 6,

1996 (Docket No 190356)(**Exhibit D**). The court permitted intervention as of right under MCR 2.209(A),

holding:

> The hospital has an interest in the subject matter of the litigation. Further, insofar as
> Michigan law does not permit a "hospital lien" on insurance proceeds, we find that
> *intervention is necessary to permit the hospital to protect its interest in the PIP*
> *benefits paid to plaintiff, who has an outstanding bill with the hospital.* CF *Tucker v*
> *Clare Bros. Limited,* 196 Mich App 513, 517-518; 493 NW2d 918 (1992). Finally,

> neither plaintiff nor defendant represented the hospital's interest in being paid in full.
> We conclude that the hospital fulfilled the requirements to intervene in the present
> action as of right. (emphasis added).

If intervention is not granted, Rising Star Health Services would be entitled to maintain a direct action against the insurer in a separate suit and could then seek consolidation. Given the desire for judicial economy, however, intervention is a more sensible use of judicial resources.

In *Precision Pipe & Supply v Meram Construction,* 195 Mich App 153 (1992), the court reminds us that MCR 2.209 (A)(3) "...should be liberally construed to allow intervention when the applicant's interest otherwise may be inadequately represented." *Id.* at 156. Like the medical provider in *Marsack,* neither the Plaintiff nor the Defendant will necessarily represent Rising Star Health Services interests in being paid in full. Moreover, Ms. Mitchell's counsel may well have a conflict of interest in settlement negotiations should he purport to represent Rising Star Health Services. Ms. Mitchell has no direct incentive to protect Rising Star Health Services' interests in this matter, and Rising Star Health Services cannot be assured that its interest in receiving full payment plus all appropriate No-Fault penalties will be protected. Further, Ms. Mitchell and Rising Star Health Services are not in privity and have different interests in the ultimate resolution of the litigation. See *Anree Health Care Inc v Farm Bureau Ins Co,* unpublished opinion per curiam of the Court of Appeals, decided November 9, 2010 (Docket No. 294081) (Exhibit E).

Since there has been no final adjudication on the merits of the underlying case, intervention is proper at this time. Intervention is timely where it is permitted *prior* to the adjudication on the merits of the main case. See generally *Foote Hospital v Public Health Department,* 210 Mich App 516 (1995). Moreover, intervention is sought before final judgment, before trial, and will not delay the proceedings, prejudice or upset the litigation that has occurred to date in any way.

## III.   CONCLUSION

For the above reasons, Rising Star Health Services asks this Court to permit intervention in this matter. Accordingly, Intervening Applicant, Rising Star Health Services seeks this Court grant intervention and permit Rising Star Health Services to file its Intervening Complaint (see **Exhibit A**).

THE LOBB LAW FIRM

/S/ JEREMY KNOX

JEREMY KNOX (P63907)
Attorney for Intervening Applicant
26321 Woodward Avenue
Huntington Woods, MI 48070
(248) 591-4090

Dated: May 11, 2015

**PROOF OF SERVICE**

The Undersigned certifies that the forgoing instrument was
served upon all parties to the above cause to each of the attorneys
of record herein at their respective addresses disclosed on the
pleadings on this _____ day of _____ 2015.

☐ US Mail            ☐ Fax
☐ Hand Delivered     ☐ UPS
☐ Fed.Express        ✓ E-File/Serve

Signature_____

Name_____ Erin Sugg _____

# EXHIBIT "C"



1826 Oakman Blvd Detroit, Mich. 48238
Phone: 734.837.5350
Fax:    313.731.0285
Email:  ds_mlag@yahoo.com

BILLING SUMMARY BARBARA MITCHELL   ALLSTATE  CLAIM #  ACP  140222001

**BILLING PERIOD**            **BILLING AMOUNT**

| | | |
|---|---|---|
| 7/15 - 7/26/2014 | $3,240.00 | **BILLING DATES 7/15/2014 - 4/18/2015** |
| 7/27 - 8/9/2014 | $3,840.00 | |
| 8/10 - 8/23/2014 | $3,840.00 | |
| 8/24 - 9/6/2014 | $4,080.00 | |
| 9/7 - 9/9/20/2014 | $5,520.00 | |
| 9/21 - 10/4/2014 | $11,520.00 | |
| 10/5 - 10/18/2014 | $11,520.00 | |
| 10/19 - 11/1/2014 | $11,520.00 | |
| 11/2 - 11/15/2014 | $10,080.00 | |
| 11/16 - 11/29/2014 | $10,080.00 | |
| 11/30 - 12/13/2014 | $10,080.00 | |
| 12/14 - 12/27/2014 | $10,080.00 | |
| 12/28 - 1/10/2015 | $10,080.00 | |
| 1/11 - 1/24/2015 | $10,080.00 | |
| 1/25 - 2/7/2015 | $10,080.00 | |
| 2/8 - 2/21/2015 | $10,080.00 | |
| 2/22 - 3/7/2015 | $10,080.00 | |
| 3/8 - 3/21/2015 | $10,080.00 | |
| 3/22 - 4/4/2015 | $10,080.00 | |
| 4/5 - 4/18/2015 | $10,080.00 | |

TOTAL BILLING            $176,040.00

Submitted by Deborah Sanders, Billing Manager

# EXHIBIT "D"

## *Warren v. State Farm Mut. Auto. Ins. Co.*

United States District Court for the Eastern District of Michigan, Southern Division

April 30, 2007, Decided ; April 30, 2007, Filed

Case No. 06-15054

**Reporter**
2007 U.S. Dist. LEXIS 31408; 2007 WL 1267579

SHEILA WARREN an Individual, Plaintiff, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

**Counsel:** [*1] For Sheila Warren, Plaintiff: Adrienne D. Logeman-Cox, LEAD ATTORNEY, Logeman, Iafrate, (Ann Arbor), Ann Arbor, MI, Robert E. Logeman, LEAD ATTORNEY, Logeman, Iafrate, (Ann Arbor), Ann Arbor.

For State Farm Mutual Automobile Insurance Company, Defendant: Eric D. Smith, LEAD ATTORNEY, Hopkins, Curran, (Southfield), Southfield, MI.

**Judges:** Steven D. Pepe, United States Magistrate Judge.

**Opinion by:** Steven D. Pepe

# Opinion

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND TO** <u>WASHTENAW COUNTY CIRCUIT COURT (Dkt. # 6)</u>

### I. INTRODUCTION

This is a civil action, which Plaintiff initially filed in Washtenaw County Circuit Court on October 11, 2006, alleging breach of contract, misrepresentation and requesting equitable relief. On November 9, 2006, Defendant subsequently filed its Notice of Removal of this action to this Court (Dkt. # 1). On December 6, 2006, Plaintiff filed its motion to remand this case back to the Washtenaw County Circuit Court (Dkt. # 6). In accordance with the provisions of *28 U.S.C. § 636(c)* and *Fed. R. Civ. P. 73*, the parties in this case have consented to have the undersigned conduct any and [*2] all proceedings and enter a final order as to Plaintiff's motion for remand (Dkt. # 9). For the reasons stated below, Plaintiff's Motion is GRANTED and this case is REMANDED to the Washtenaw County Circuit Court.

### II. BACKGROUND FACTS

This is a first party no-fault action arising out of a motor vehicle striking Plaintiff on her bike on October 29, 1985. Plaintiff suffered traumatic brain injury with resulting emotional and cognitive impairments, rib injuries and leg injuries. Plaintiff also suffers from drug and alcohol abuse and over the years has been in and out of rehabilitation programs for substance abuse and psychiatric problems. Because of her relapse potential, Plaintiff was referred to a group of facilities owned and operated by Roman Frankel, that are limited to treat patients with both traumatic brain injury and addictions. A dispute over the necessity and reasonableness of these providers' services arose, which led to Plaintiff filing a lawsuit in Washtenaw County Circuit Court in 2004 (*See*, Dkt. # 6, Ex. A). The initial pleadings were filed with a Complaint and Jury Demand against the named Defendant on May 12, 2004, and the case was assigned [*3] to Judge Donald E. Shelton. Resolution and voluntary payment was reached in June 2005 for the residential program benefits, and a stipulated order for dismissal with prejudice was entered on or about June 30, 2005 (*See*, Dkt. # 10, Ex. 1).

On October 11, 2006, Plaintiff filed this case in Washtenaw County Circuit Court because State Farm terminated certain benefits which Plaintiff alleges had been agreed upon in the prior proceedings and releases. A review of Plaintiff's May 12, 2004, Complaint and Jury Demand and October 11, 2006, Complaint and Jury Demand confirms that the allegations, parties, and requests for relief in both submissions are virtually identical (Compare, Dkt. # 6, Ex. A to Dkt. # 6, Ex. B). The case was again assigned to Judge Shelton. On November 9, 2006, Defendant filed its Notice of Removal of this action to the United States District Court, Eastern District of Michigan, Southern Division (Dkt. # 1).

Plaintiff now argues (1) that diversity jurisdiction is lacking and (2) that Defendant has filed an untimely Notice of Removal pursuant to *28 U.S.C. § 1446(b)*, because the initial action was filed on May 12, 2004, and Defendant's Notice [*4] of Removal was not filed until November 9, 2006.

## III. LEGAL STANDARDS

Generally, a civil case brought in a state court may be removed by a defendant to federal court if it could have been brought there originally. *28 U.S.C. § 1441(a)*. A federal district court has original "diversity" jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $ 75,000, exclusive of costs and interest. *28 U.S.C. 1332(a)*. A defendant removing a case has the burden of proving the diversity jurisdiction requirements. *See Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S. Ct. 35, 66 L. Ed. 144 (1921)*. Because removal jurisdiction raises significant federalism concerns, the court must strictly construe removal jurisdiction, and resolve all doubts in favor of remand. *Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)*.

Title *28 U.S.C. § 1446* contains the procedure for removal to federal court. The pertinent sections of *28 U.S.C. § 1446* state:

(a) A defendant or defendants desiring to remove any civil [*5] action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to *Rule 11 of the Federal Rules of Civil Procedure* and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

(b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other [*6] paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by *section 1332* of this title more than 1 year after commencement of the action.

## IV. ANALYSIS

### A. Diversity Jurisdiction

Plaintiff argues that a no-fault carrier cannot use diversity for removal of first party matters because Defendant State Farm is deemed to be a citizen of the same state as Plaintiff under *28 U.S.C. § 1332(c)(1)*. Defendant State Farm responds that controlling Sixth Circuit precedent interprets *§ 1332(c)(1)* otherwise under circumstances like those presented here between an insured and a no-fault insurer. *See Lee-Lipstreu v. Chubb Group of Ins. Co., 329 F.3d 898 (6th Cir.2003)*; *Henry v. Wausau Business Ins. Co., 351 F.3d 710 (6th Cir.2003)*.

*28 U.S.C. § 1332(c)(1)* provides that:

a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the [*7] insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business . . . .

Plaintiff's argument is not centered on the language of *28 U.S.C. § 1332(c)(1)*, but rather, the distinction between "optional" and "mandatory" coverages required under Michigan no-fault law, and the fact that Michigan law requires insurers issuing no-fault policies to be "admitted carriers" pursuant to state regulatory schemes. None of these claims, however, alter the proper interpretation of *28 U.S.C. § 1332(c)(1)*. Moreover, Plaintiff's counsel previously raised these identical arguments in this District in nearly verbatim fashion and lost (*See, Hillen v. Allstate*, Case No. 05-74330, Dkt. # 7). In *Hillen v. Allstate, 2006 U.S. Dist. LEXIS 5604, 2006 WL 250038 (E.D. Mich. 2006)*, Judge Edmunds found:

Congress enacted [*28 U.S.C. § 1332(c)(1)* [*8] ] in order to prevent a plaintiff of State A, who was injured by a party who is also a resident of State A, from achieving diversity jurisdiction by suing the other party's foreign insurance company while intentionally failing to join the individual party in the

suit. In other words, the statute prevents "back door diversity," i.e., the practice of substituting a tortfeasor's insurer for the tortfeasor as a named defendant to create diversity. Accordingly, diversity will not be defeated in no-fault insurance disputes where the plaintiff sues the insurance company directly, rather than the owner or operator of the insured vehicle. See Ford Motor Co. v. Ins. Co. of N. Am., 669 F.2d 421, 425 (6th Cir.1982) (observing that § 1332(c)(1) applied where the plaintiff had directly sued the tortfeasor's insurance company rather than the insured owner of the vehicle and the plaintiff and unnamed insured owner were citizens of the same state).

The Sixth Circuit has recently observed that § 1332(c)(1) does not apply where its purpose would not be served; i.e., in actions by an insured against his own insurer to recover for his own injuries. See Lee-Lipstreu v. Chubb Group of Ins. Cos., 329 F.3d 898, 899-900 (6th Cir.2003) [*9] (observing that application of "the direct action provision to a dispute solely between an insured and her own insurance company would result in an absurdity-federal courts would never hear common insurance disputes because the insured and the insurer, the plaintiff and the defendant, would always be considered citizens of the same state.") Accord Henry v. Wausau Business Ins. Co., 351 F.3d 710, 713 (6th Cir.2003) (observing that "federal courts have jurisdiction over actions by an insured against his or her own insurance company if the two parties are diverse because such actions are not direct actions within the meaning of 28 U.S.C. § 1332(c)(1)").

2006 U.S. Dist. LEXIS 5604, [WL] at *1-2.

It is not disputed that this is a first-party action for no-fault personal injury protection benefits arising out of a motor vehicle accident that originally occurred on or about October 29, 1985. State Farm is an Illinois based company and Plaintiff is a citizen of Michigan. The amount in controversy exceeds $ 75,000. Accordingly, under prevailing Sixth Circuit precedent, diversity jurisdiction exists under § 1332.

**B. Untimely Notice of Removal**

Plaintiff [*10] argues that this case should be remanded to the Washtenaw County Circuit Court because Defendant has filed an untimely Notice of Removal pursuant to 28 U.S.C. § 1446(b). The initial action

involving these same parties and same issues was filed on May 12, 2004. Defendant filed a Notice of Removal in the present action on November 9, 2006. Defendant argues that for purposes of timeliness the present action should be treated distinct from the former, as the previous case was dismissed with prejudice therefore barring any re-litigation of former claims pursuant to the principles of res judicata.

28 U.S.C. § 1446(b) provides that:

> The notice of removal of a civil action or proceeding **shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief** upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." (Emphasis added).

The [*11] key to resolving the timeliness of a November 6, 2006, removal attempt is to determine when the thirty day time limit began to run -- on May 12, 2004, when the initial action was filed, or on October 11, 2006, when the present action was filed.

In Korzinski v. Jackson, 326 F. Supp. 2d 704 (E.D. North Carolina 2004), the court addressed the situation in which plaintiff filed a July 11, 2001, complaint alleging automobile negligence, there was a voluntary dismissal of the action, the same complaint was re-filed involving the same parties in March 2004, and a defendant then filed a April 2, 2004, Notice of Removal on the basis of diversity jurisdiction. Finding that defendant's Notice of Removal was untimely, the court stated:

> "Federal court decisions § 1446 reflect a pragmatic approach to the thirty day limit for removal that does not favor removal under circumstances of this case where the 'new action' commenced is no more than a formality and a continuation, in all other respects, of the original action. For example, the Fifth Circuit in Johnson v Heublein Inc., 227 F.3rd 236, 241 (5th Cir.2000), described a 'judicially-created revival [*12] exception' to the thirty day requirement of section 1446(b).' Id. Under this exception, a defendant is permitted to remove beyond thirty-days after the initial filing where 'the complaint is amended so substantially as to alter the character

Case 2:15-cv-11707-GAD-EAS  ECF No. 6, PageID.119  Filed 05/29/15  Page 43 of 50

Page 4 of 5
2007 U.S. Dist. LEXIS 31408, *12

of the action and constitute essentially a new lawsuit.' *Id. at 241-42* (citing *Wilson v Intercollegiate (Big Ten) Conference A. A., 668 F.2d 962 (7 Cir.1982)*) ('[T]he courts have read into *§ 1446(b)* an exception for the case where the plaintiff files an amended complaint that so changes the nature of his action *as to constitute substantially a new suit begun that day.*') (emphasis added). Courts applying this exception have reasoned that 'although a defendant has submitted himself to state court jurisdiction on one cause of action, this does not prevent his removing the cause when an entirely new and different cause of action is filed in the same case.' *Id. at 241-42* (alterations in original) (citing *Cliett v Scott, 233 F.2d 269, 271 (5 Cir.1956)*).

*Korzinski, 326 F. Supp. 2d at 706-707* (Emphasis added).

Defendant argues that *Korzinski* is distinguishable from the [*13] present case because the plaintiff in *Korzinski* **voluntarily** dismissed the case **without prejudice** pursuant to a state court rule 41(a)(1). [1]  In addition, Defendant argues that the *Korzinski* Court declined to call the re-filed complaint a "new" action for removal purposes because the second complaint was, in all substantive respects, a continuation of a significantly developed lawsuit that commenced almost a year earlier. Defendant contends that under Michigan law a voluntary dismissal with prejudice is a final adjudication on the merits, which bars the parties from re-litigating their claims. Accordingly, Defendant argues that if Plaintiff contends that the present action is nothing more than a re-filling and/or alleged continuation of a prior lawsuit, the principles of *res judicata* require that Plaintiff's claims in the present action are bared entirely.

[*14] Defendant's *res judicata* contention is only correct to the insurance benefits in dispute in the first litigation.

In no-fault cases, Courts have specifically addressed that there is a continuing accrual of no-fault benefits, based on the core language of the No-Fault Act. A dismissal with prejudice is only effects the benefits at issue prior to that dismissal. A final judgment on the merits does not bar a Plaintiff's claim for continuing benefits that are unpaid. *See, Elser v Auto-Owners, 253 Mich. App. 64, 654 N.W.2d 99 (2002).* The benefit must be "incurred" in order to claim it as a damage against a no-fault carrier. *See Proudfoot v State Farm, 469 Mich. 476, 673 N.W.2d 739 (2003).* At the time of the resolution of the 2004 matter, there was dismissal with prejudice for the claims up until the time of the release. There was not a dismissal or waiver of future benefits.

The damages being sought in the present matter are for benefits claimed after the 2005 settlement. Under Michigan law, it was not possible to litigate these claims in the prior action because they had yet to occur. The continuing need for treatment at the Frankel facility and continuing entitlement to insurance [*15] benefits are dependent in significant part on medical facts on and after June 30, 2004, dismissal date of the first lawsuit. Thus, it is clear that the present action is not a "re-litigation" of damages incurred prior to settlement. Yet, does this difference in the time period considered make the second suit sufficiently different to warrant Defendant having a second election opportunity for a federal forum after foregoing that opportunity in the first case. This case does appear to be a continuation of an established lawsuit because both cases involve the exact same parties, same medical provider and same type of bills (although for a different time frame) that are once again being denied by Defendant State Farm. Furthermore, Plaintiff claims that some of the actions and agreements made in the past litigation affect the rights of the parties in the current litigation. But for the prejudice that attaches to the damages claims for the period prior to mid-2005, this case would be

[1]  Rule 41(a)(1) of the North Carolina Rules of Civil Procedure states:

By Plaintiff; by Stipulation.—Subject to the provisions of Rule 23(c) and of any statute of this State, an action or any claim therein may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before the plaintiff rests his case, or; (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court or any other state or of the United States, an action based on or including the same claim. If an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal unless a stipulation filed under (ii) of this subsection shall specify a shorter time.

2007 U.S. Dist. LEXIS 31408, *15

indistinguishable from the *Korzinski* case. Nor are there any principled reasons to treat it differently. Defendant knew the Plaintiff, the issues the court and the judge involved in the May 12-July 12, 2004, period [*16] when it elected to remain in the Michigan state court. No substantial policies involving notice, opportunity, fairness or federalism warrant providing Defendant a second election regarding a federal forum.

Principles of efficiency would support returning this case to the state forum of its origin. This case has a long history in Washtenaw County Circuit Court before Judge Shelton. The prior action progressed for 13 months on the same provider and services, and was 2 months from trial before it was settled. The present lawsuit is seeking further benefit installments for the same benefits and the same medical expenses that were being incurred in the last lawsuit until State Farm terminated voluntary medical. The only bill that is presently not being paid is residential care. In the 2004 lawsuit, the only bill that was not being paid was residential care. The same facility providing the residential care and the same parties are involved. A review of Plaintiff's May 12, 2004, Complaint and Jury Demand and October 11, 2006, Complaint and Jury Demand confirms that the allegations and requests for relief in both submissions are virtually identical (*Compare*, Dkt. # 6, Ex. A to Dkt. [*17] # 6, Ex. B). There are no new causes of action or theories plead and it involves the same Defendant cutting off the exact same benefits litigated back in 2004 before Judge Shelton.

As stated in *Korzinski*, Federal court decisions regarding § 1446 reflect a *pragmatic approach* to the thirty day

limit for removal. Utilizing such an approach to analyze the facts in this case, does not favor removal because the "new action" appears to be no more than a formality and a continuation, in all other respects, of the original action. For the benefit of judicial economy and to reduce the potential for "judge shopping," it is appropriate for this matter to be maintained in state court before the same judge who is fully familiar with the facts and parties in this case.

Because Defendant never objected to jurisdiction in state court and never sought removal from May 12 to July 12, 2004, Defendant's current attempt to remove this matter pursuant to § 1446 is untimely. Accordingly, Plaintiff's motion is **GRANTED** and it is **ORDERED** that this case is remanded to the Washtenaw Count Circuit Court.

## V. ORDER

For the reasons stated above, **IT IS ORDERED THAT** Plaintiff's [*18] motion is **GRANTED** and this case is **REMANDED** to the Washtenaw County Circuit Court.

## SO ORDERED.

Date: April 30, 2007

Flint, Michigan

s/Steven D. Pepe

United States Magistrate Judge

# EXHIBIT "E"

# Ljuljdjuraj v. State Farm Mut. Auto. Ins. Co.

United States Court of Appeals for the Sixth Circuit

October 7, 2014, Argued; December 19, 2014, Decided; December 19, 2014, Filed

File Name: 14a0299p.06

No. 13-2641

**Reporter**
774 F.3d 908; 2014 U.S. App. LEXIS 24108

ELVIRA *LJULJDJURAJ*, Plaintiff-Appellant, *v. STATE FARM* MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.

**Prior History:** [**1] Appeal from the United States District Court for the Eastern District of Michigan at Detroit. No. 2:13-cv-11655—Gerald E. Rosen, Chief District Judge.

*Lulgjuraj v. State Farm* Mut. Auto. Ins. Co., 2013 U.S. Dist. LEXIS 171305 ( E.D. Mich., Dec. 5, 2013)

## Case Summary

### Overview

HOLDINGS: [1]-The direct action provision of 28 U.S.C.S. § 1332(c)(1) did not apply to the instant case because the injured party was suing the insurance company on a policy that provided coverage to her by virtue of the primary insured and not based on any sense of the liability of the primary insured to the injured party.

### Outcome

Judgment reversed. Case remanded.

**Counsel:** ARGUED: Mark Dundon, DAILEY LAW FIRM, P.C., Royal Oak, Michigan, for Appellant.

James G. Gross, JAMES G. GROSS, P.L.C., Detroit, Michigan, for Appellee.

ON BRIEF: Mark Dundon, DAILEY LAW FIRM, P.C., Royal Oak, Michigan, for Appellant.

James G. Gross, JAMES G. GROSS, P.L.C., Detroit, Michigan, for Appellee.

**Judges:** Before: ROGERS and KETHLEDGE, Circuit Judges; and MALONEY, District Judge.[*]

**Opinion by:** ROGERS

## Opinion

[*909] ROGERS, Circuit Judge. This case concerns the scope of the "direct action" proviso of the federal diversity jurisdiction statute, 28 U.S.C. § 1332(c)(1), and its application to suits brought under Michigan's no-fault automobile insurance laws. Elvira *Ljuljdjuraj* was driving a borrowed car when she drove over a patch of ice and collided with a negligently parked vehicle. The car she was driving was owned by a friend, Bardhyl Mullalli. *Ljuljdjuraj* filed a diversity suit in federal court, seeking recovery under Mullalli's no-fault automobile insurance [**2] policy, issued by *State Farm*, for injuries she suffered in the accident. *Ljuljdjuraj* and Mullalli are both citizens of Michigan, while *State Farm* is a citizen of Illinois. The district court dismissed the suit for lack of diversity jurisdiction because the court determined that the suit was a "direct action" under 28 U.S.C. § 1332(c)(1), requiring Mullalli's Michigan citizenship to be imputed to *State Farm*. On appeal, both *Ljuljdjuraj* and *State Farm* argue that the "direct action" proviso does not apply and accordingly that diversity jurisdiction exists. Because the direct action proviso does not apply to suits brought against the insurer by insured persons identifiable before the accident occurs, this suit was not a direct action and Mullalli's citizenship should not have been imputed to *State Farm*.

Just after midnight on December 29, 2012, Elvira *Ljuljdjuraj* struck an icy patch while making a left turn

---

[*] The Honorable Paul L. Maloney, Chief United States District Judge for the Western District of Michigan, sitting by designation.

and collided with a negligently parked car.[1] As a result of the collision, *Ljuljdjuraj* suffered a traumatic brain injury, acute cervical and lumbar sprains, bulging discs, and other injuries. *Ljuljdjuraj* had been driving a car borrowed from the owner, Bardhyl Mullalli. *Ljuljdjuraj* filed a claim with *State* [**3] *Farm* under Mullalli's no-fault insurance policy, but *State Farm* refused to pay. *Ljuljdjuraj* filed suit in the Eastern District of Michigan, pleading that the amount-in-controversy exceeded $75,000, that she was a citizen of Michigan, and that *State Farm* was a citizen of Illinois. Elvira's aunt—Drana Lulgjuraj—was a passenger in the car and was also injured. Drana filed a separate suit against *State Farm* for recovery under Mullalli's policy.

Although both women were represented by the same law firm, their lawyers did not notify the district court that the cases were related; as a result, the two cases [*910] were assigned to different judges. Lulgjuraj's case before Judge Gerald Rosen moved more quickly; the district court issued an order to show cause for why subject matter jurisdiction was not lacking. Lulgjuraj failed to show cause and her case was dismissed before *State Farm* appeared. *State Farm* subsequently appeared in *Ljuljdjuraj*'s suit and requested to have the case transferred to Judge Rosen. The case was transferred, *State Farm* filed a motion to dismiss for lack of subject matter jurisdiction, and the motion was granted. [**4] Noting that the complaints were "virtually word-for-word identical," the district court incorporated by reference its order dismissing Lulgjuraj's suit into its order dismissing *Ljuljdjuraj*'s suit.

The district court dismissals relied primarily on *Ford Motor Co. v. Insurance Co. of North America, 669 F.2d 421, 425 (6th Cir. 1982)*. The court determined that *Ljuljdjuraj* did "not seek to recover benefits from her own insurance company but rather from the insurer of a third-party, Bardhyl Mulalli." The district court interpreted *Ford* as holding that "[i]n suits against insurers under Michigan's no-fault scheme, the direct action provision in 28 U.S.C. § 1332(c)(1) is applicable, and where imputing the insured's citizenship to the insurer destroys diversity, the federal court is without jurisdiction to hear the case." Because *Ljuljdjuraj* did not seek to recover benefits from her own insurance company but rather from the insurer of a third party, the district court determined that the direct action proviso of the diversity statute applied.

*Ljuljdjuraj* appeals the dismissal and *State Farm* now argues in favor of the existence of subject matter jurisdiction.

The federal courts have subject-matter jurisdiction over this case because it satisfies the diversity jurisdiction requirements of 28 U.S.C. § 1332. There is complete [**5] diversity of citizenship between the parties and the amount in controversy requirement is met. *Ljuljdjuraj* is a citizen of Michigan. *State Farm*, which is incorporated in Illinois and has its principal place of business there, is a citizen of Illinois. *Ljuljdjuraj* pleads that the amount in controversy exceeds $75,000. The only argument against diversity jurisdiction in this case is that Michigan citizenship should be imputed to *State Farm* by operation of § 1332(c)(1)'s direct action proviso. But this case is not a direct action.

The direct action proviso of § 1332(c)(1) does not apply to suits brought by an insured against her own insurer because such a suit is not a "direct action against the insurer of a policy or contract of liability insurance." The statute provides:

> in any direct action against the insurer of a policy or contract of liability insurance . . . to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the *State* of which the insured is a citizen . . . .

28 U.S.C. § 1332(c)(1). The direct action proviso was designed to prevent local tort suits from overwhelming the federal courts. The proviso was adopted by Congress in response to *state* laws in Louisiana and Wisconsin [**6] that permitted injured plaintiffs to sue directly the insurers of tortfeasors without joining the tortfeasors as defendants. *Ford, 669 F.2d at 424*. These *state* "direct action" statutes created diversity jurisdiction where none had previously existed, since the (usually local) tortfeasors were not present in the suit to destroy complete diversity between the plaintiffs and the (usually out-of-*state*) insurers. *Northbrook Nat'l Ins. Co. v. Brewer, 493 U.S. 6, 9-10, 110 S. Ct. 297, 107 L. Ed. 2d 223 (1989)*. The result was "a flood of essentially local lawsuits clogging [*911] already crowded district court dockets." *Ford, 669 F.2d at 424*.

The language of the statute on its face does not apply where a suit is brought under an insurance policy provision that does not provide for liability insurance,

---

[1]  This summary of the facts comes from *Ljuljdjuraj*'s complaint.

but rather where a suit is brought under a policy provision that covers the plaintiff on a basis *other than* liability by the insured to the plaintiff. That is precisely the case here. The insurance provision at issue provides benefits on the basis of plaintiff's having been a passenger in the primary insured's automobile, and not on the basis of the primary-insured's liability to the plaintiff. This is clear from both the insurance contract, and from the Michigan statutory provisions that the contract was required to comply with.

*Ljuljdjurai* [**7] seeks recovery from a policy under which she is not the named insured—Bardhyl Mullalli's policy. But Michigan law requires automobile insurance policies to provide fallback coverage[2] for "a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle," and occupants "shall claim personal protection insurance benefits from . . . the insurer of the owner or registrant of the vehicle occupied." *Mich. Comp. Laws § 500.3114(4)* (2014). Mullalli's policy, which was introduced into the record only after the district judge dismissed the case, appears to provide the required coverage expressly, and in any event provides such coverage by operation of law. The policy specifically identifies "any person occupying your car" as an "insured." *Ljuljdjurai* pleads that she was occupying Mullalli's car when she suffered accidental bodily injury. She is therefore covered by Mullalli's policy. Accordingly, *Ljuljdjurai*'s suit is not a "direct action against the insurer of a policy or contract of liability insurance."

Our holding in *Lee-Lipstreu v. Chubb Group of Ins. Cos., 329 F.3d 898, 899-900 (6th Cir. 2003)*, albeit outside of the no-fault context, strongly supports this conclusion. *Lee-Lipstreu* involved an Ohio law *Scott-Ponzer* claim. The Ohio Supreme Court in *Scott-Ponzer* had held that an insurance policy issued to a corporation provided coverage for its employees if the term "you" was vague. *Scott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St. 3d 660, 1999 Ohio 292, 710 N.E.2d 1116, 1119 (Ohio 1999) overruled in part by Westfield Ins. Co. v. Galatis, 100 Ohio St. 3d 216, 2003 Ohio 5849, 797 N.E.2d 1256 (Ohio 2003)*. We rejected the applicability of the direct action provision of § 1332(c)(1) because in a *Scott-Ponzer* claim "the entire suit rests on the conclusion that the *employee is the insured* under the policy":

Thus, in a *Scott-Ponzer* claim, the insured sues her own insurance carrier. The insured obviously is not joined as a party-defendant because the insured is the plaintiff. Applying the direct action provision to a dispute solely between an insured and her own insurance company would result in an absurdity—federal courts would never hear common insurance disputes because the insured and the insurer, the plaintiff and the defendant, would always be considered citizens of the same **state**. We recognize that the direct action provision applies in certain situations involving insureds and insurers, but we conclude that it does not apply here. . . . [W]hen an injured party sues [**9] her own uninsured motorist carrier, it is not a direct action.

[*912] *Lee-Lipstreu, 329 F.3d at 899-900*. The same analysis applies in this case. Just like the plaintiff in *Lee-Lipstreu*, *Ljuljdjurai* is suing the insurance company on a policy that provided coverage to her by virtue of her relationship to the primary insured—employee of the named insured in *Lee-Lipstreu*, and occupant of the named insured's automobile in this case—and not based in any sense on the liability of the named insured to the plaintiff.

This conclusion is supported by the reasoning of our sister circuits, which have consistently held that the direct action proviso does not apply to suits by insureds against their insurers outside of the liability insurance context. *E.g., White v. United States Fid. & Guar. Co., 356 F.2d 746, 747 (1st Cir. 1966)*; *Bowers v. Cont'l Ins. Co., 753 F.2d 1574, 1576 (11th Cir. 1985)*; *McGlinchey v. Hartford Acci. & Indem. Co., 866 F.2d 651, 653 (3d Cir. 1989)*. As the Second Circuit explained in persuasive dictum:

Courts have construed the term "insured" in § 1332(c) broadly to include not only the named insured but also any person covered by an omnibus or "other insured" clause in the policy (for example, a clause that extends insurance coverage to anyone operating the car with the permission of the named insured). . . . [P]laintiff is a "covered person" under New York's no-fault law. Because the § 1332(c) proviso is designed to address cases in which an insured may [**10] be, but is not, joined as a party-defendant, it would be inappropriate for the proviso to affect situations where a person

[2] That is, this coverage applies only if the vehicle occupant is not otherwise covered by a policy covering herself or her spouse, or providing certain other coverage. [**8] Mich. Comp. Laws § 500.3114(1)-(5) (2014).

characterizable as an insured party sues the insurer, since a plaintiff obviously cannot join herself as a party-defendant. In no published federal case of which we are aware has a named insured suing an out-of-*state* insurer for breach of contract been excluded from federal court pursuant to § 1332(c). We can see no reason why the named insured should be able to sue the insurer for no-fault benefits, but plaintiff, asserting a similar claim for no-fault benefits, should be confined to **state** court simply because the policy under which she is covered is not held in her name.

*Rosa v. Allstate Ins. Co., 981 F.2d 669, 677 n.18 (2d Cir. 1992).*

The district court understandably came to a different conclusion in this case based on some broad language in our opinion in *Ford Motor Co. v. Insurance Co. of North America, 669 F.2d 421, 422 (6th Cir. 1982)*. In that case we said that the direct action provision applies "where a party claiming damages arising out of the use of a motor vehicle sues the insurer of the vehicle under the Michigan 'no-fault' statute and a policy issued thereunder." *Id. at 422. Ford* is distinguishable, however, primarily because it involved the property damage provision of the Michigan no-fault act.

Ford Motor Company [**11] sought Property Protection Insurance benefits for damage resulting from an explosion at one of its plants. The explosion was caused by the accidental mixture of two chemicals, one of which had been delivered by a truck owned and operated by Refiners Transport and Terminal Corporation. Ford sought recovery from Refiners' no-fault insurance policy, which had been issued by Insurance Company of North America. Ford sued the insurance company directly, without joining Refiners. Although diversity existed between Ford and the insurer, when the citizenship of Refiners was imputed to the insurer under § 1332(c)(1), diversity was destroyed.

*Ford* involved the property protection benefits provision of the Michigan no-fault act, which provides that "an insurer is liable to pay benefits for accidental damage [*913] to tangible property arising out of the ownership, operation, maintenance or use of a motor vehicle." *Mich. Comp. Laws § 500.3121* (2014). In holding that the direct action proviso applied to a suit by the owner of

damaged property against the insurer of the owner of the vehicle causing the damage, we noted that the Michigan no-fault act abolished tort liability arising from the use of a motor vehicle in Michigan, and that as a substitute [**12] for such tort liability Michigan provided "personal protection benefits" and "property protection benefits" on a no-fault basis and permitted directly maintained actions to secure the benefits, thereby meeting the literal requirements for the direct action proviso of the diversity statute. *Ford, 669 F.2d at 425*. We also reasoned that Michigan no-fault insurance "operates in exactly the same way as the Louisiana and Wisconsin direct action statutes—it permits a person claiming injury or damage arising from the ownership or use of a motor vehicle to sue the insurer rather than the owner or operator of the vehicle." *Id.* This analysis has some force in the context of the property protection provisions of the Michigan nofault act, but little force in the context of the personal protection benefit. Unlike **Ljuljdjuraj**, Ford was not "insured" by the policy from which it sought recovery. Under Michigan law, "[p]roperty protection benefits are distinguishable from personal protection benefits (PIPs) because, among other things, property protection benefits provide third-party protection, whereas PIPs provide first-party protection." *Turner v. Auto Club Ins. Ass'n, 448 Mich. 22, 30, 528 N.W.2d 681 (2000)*. The personal protection provisions of Michigan's no-fault law require coverage of an identifiable [**13] group of individuals: the named insured, a spouse, any relatives living with them, and any occupant of a car they own.[3] *Mich. Comp. Laws § 500.3114(4)* (2014). All these people are insured by the policy. By contrast, the property protection provision of the statute **states** simply that "an insurer is liable to pay benefits for accidental damage." *Mich. Comp. Laws § 500.3121* (2014). Although one could conceivably consider property damage plaintiffs to be "covered" by a statutorily-required obligation to pay for damaged property, it stretches the meaning of insured party to include every person whose property might in the future be damaged by the automobile of the named insured. The first-party coverage provided by the Michigan no-fault act, in contrast, provides that categories of individuals, identifiable before any accident has occurred, are "insured" by virtue of their relationship to the named insured. Extending diversity jurisdiction to property damage suits by whoever is injured is obviously much broader than expanding the categories of identified individuals who are covered, and thus more

---

[3]  This coverage extends only to people that the owner allows to occupy the car; Michigan law excludes from coverage any person who takes a motor vehicle unlawfully. Mich. Comp. Laws § 500.3113 (2014).

774 F.3d 908, *913; 2014 U.S. App. LEXIS 24108, **13

strongly implicates the concerns that led to passage of the direct action proviso. _**Stated**_ differently, suits against insurance companies by owners of [**14] damaged property are far more similar to direct action suits based on liability insurance than suits by car occupants who are listed in the insurance policy pursuant to the statute as "insured" prior to the occurrence of the accident. It follows that, while we are bound by our published holding in _Ford_, that holding binds at most with respect to the property protection benefits that were at issue in that case. Thus, the direct action proviso of the federal diversity statute does not apply in this case, notwithstanding our holding in _Ford_.

 [*914] For these reasons we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

Prerana Bacon